**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 13-cv-02934-REB-CBS

DIGITAL SATELLITE CONNECTIONS, LLC, and,
KATHY KING,

    Plaintiffs,

v.

DISH NETWORK CORPORATION,
DISH NETWORK, LLC, and
DISHNET SATELLITE BROADBAND, LLC,

    Defendants.

## ORDER CONCERNING MOTIONS FOR SUMMARY JUDGMENT

**Blackburn, J.**

This matter is before me on the following: (1) **Plaintiffs' Motion for Partial Summary Judgment and permanent Injunction** [#104, restricted filing #97][1]; and (2) **Defendants' Motion for Summary Judgment** [#101, restricted filing #100] . Both motions were filed on July 31, 2014.  The parties filed responses [#117 & #118] and replies [#137 & #139].  I deny the motion filed by the plaintiffs, and I grant in part the motion filed by the defendants.

## I. JURISDICTION

I have jurisdiction over this case under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1332 (diversity), 28 U.S.C. § 1338 (trademark), and 15 U.S.C. § 1121(a)

---

[1] "[#104]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

(trademark).

## II.  STANDARD OF REVIEW

Summary judgment is proper when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[2]  FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A dispute is "genuine" if the issue could be resolved in favor of either party.  *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Farthing v. City of Shawnee*, 39 F.3d 1131, 1135 (10th Cir. 1994).  A fact is "material" if it might reasonably affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Farthing*, 39 F.3d at 1134.

A party who does not have the burden of proof at trial must show the absence of a genuine issue of fact.  *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994), *cert. denied*, 514 U.S. 1004 (1995).  By contrast, a movant who bears the burden of proof must submit evidence to establish every essential element of its claim or affirmative defense.  *See In re Ribozyme Pharmaceuticals, Inc. Securities Litigation*, 209 F.Supp.2d 1106, 1111 (D. Colo. 2002).

In either case, once the motion has been properly supported, the burden shifts to the nonmovant to show by tendering depositions, affidavits, and other competent evidence that summary judgment is not proper.  *Concrete Works*, 36 F.3d at 1518.  All evidence must be viewed in the light most favorable to the party opposing the motion. *Simms v. Oklahoma ex rel Department of Mental Health and Substance Abuse*

---

[2] The issues raised by and inherent to the motions for summary judgment are fully briefed, obviating the necessity for evidentiary hearing or oral argument. Thus, the motions stand submitted on the papers. *Cf.* FED. R. CIV. P. 56(a). *Geear v. Boulder Cmty. Hosp.*, 844 F.2d 764, 766 (10th Cir.1988) (holding that any hearing requirement for summary judgment motions is satisfied by court's review of documents submitted by parties).

*Services*, 165 F.3d 1321, 1326 (10th Cir.), *cert. denied*, 528 U.S. 815 (1999) (abrogated on otr grounds, *Martinez v. Potter*, 347 F.3d 1208, 1210 - 1211 (10th Cir. 2003); *Eisenhour v. Weber Cnty.*, 744 F.3d 1220, 1227 (10th Cir. 2014)). However, conclusory statements and testimony based merely on conjecture or subjective belief are not competent summary judgment evidence. *Rice v. United States*, 166 F.3d 1088, 1092 (10th Cir.), *cert. denied*, 120 S.Ct. 334 (1999).

### III.  FACTS

Plaintiff, Kathy King, owns and operates the entity plaintiff, Digital Satellite Connections, LLC.  The defendants, Dish Network Corporation and related entities (collectively "Dish"), offer satellite based telecommunications services to consumers. Donald King, the brother of Kathy King, became a Dish retailer in May 1998.  Mr. King created a company named Digital Satellite Connections (DSC).  Digital Satellite Connections was a sole proprietorship or d/b/a.  *Werner Declaration* [#100 - filed under restriction], Exhibit 5 [#100-1 filed under restriction], p. 1.

In May 1999, Donald King registered the internet domain name dishnet.com.  He used that domain name to display a web page exhorting consumers to contact DSC to purchase Dish Network services.  Mr. King also registered the internet domain names dishnetworks.com, dishnetworksatellite.com, and dishnet500.com.  He used these domain names to advertise the sale of Dish Network services.

Donald King died in October 2000.  His wife, Catherine King, operated DSC for a time.  According to plaintiff, Kathy King, she took over the operation of DSC at some point in time in the years 2002 to 2004.  The plaintiff continued to operate the business as her predecessors had, selling Dish services to consumers as an authorized Dish dealer and using the name Digital Satellite Connections.  The plaintiff continued to

operate the business as an authorized Dish dealer until the end of 2012. At the end of 2012, Ms. King did not renew DSC's contract with Dish.

It is undisputed that DSC, as a sole proprietorship operated by Kathy King, executed a Dish Network Retailer Agreement which became effective "as of December 31, 2010." *Werner Declaration* [#100 - filed under restriction], Exhibit 7 [#100-3 filed under restriction] (Agreement). In their response [#118] to the motion for summary judgment of the defendants, the plaintiffs contend there is a genuine issue of fact as to whether this agreement was executed on behalf of DSC. However, the deposition testimony of Ms. King demonstrates conclusively that she intended to accept the 2010 agreement and that she knew she had to accept that agreement to continue working as a Dish dealer. *Kane Declaration* [#139-1], Exhibit 1 [#139-2] (King Transcript), 155:5 - 155:15. Ms. King knew someone in the offices of DSC was accepting Dish Network Retailer Agreements on behalf of Digital Satellite Connections because the agreements had to be accepted if DSC was to continue as a Dish retailer. *Id.*, 155:8 - 155:15. Further, Ms. King testified that she has no reason to dispute the contention of Dish that DSC electronically accepted the terms and conditions of a Dish retailer agreement with an effective date of December 31, 2010. *Id.*, 157:25 - 158:11. The Agreement names the retailer and trademark licensee as "KATHY KING DBA DIGITAL SATELLITE CONNECTIONS." *Agreement*, pp. 1, 38.

The Agreement includes a section titled "Trademark License Agreement." *Agreement*, pp. 33 - 38. The Trademark License Agreement defines the term "Identifying Communication Information" as

> any trade name, assumed name, domain name, telephone number (toll-free or otherwise), IP address, text messaging address, or any other letter, number, character or combination thereof used in commerce that includes

4

or refers to any Trademark, whether in whole or in part, whether separately, formatively or otherwise, and whether properly spelled or in any typographical derivation or misspelling thereof.

*Agreement*, p. 34, ¶ 1(c)((i).  Paragraph 7 of the Trademark License Agreement includes the following terms:

Licensee (DSC) agrees not to hold itself out as DISH Network, DISH, any DISH Affiliate, or any other related or affiliated entity.  To avoid any confusion in this respect, unless otherwise expressly agreed to in advance in a writing signed by an Executive Vice President of DISH (or his or her designee), Licensee agrees not to use, register, submit an application for, obtain, acquire or otherwise seek as part of its business name, trade name or otherwise any trademark or service mark that DISH at Any Time in its Sole Discretion deems to be confusingly similar to any of the Trademarks, Formative Marks or any other trademark with respect to which DISH or any of its Affiliates (i) has registered; (ii) used in commerce, or (iii) is then seeking or otherwise pursuing registration (whether within the Territory or otherwise).  In addition to (and without limitation of) any of the foregoing, Licensee agrees not to, and shall ensure that its Affiliates, if any, do not, register, submit an application for, obtain or otherwise use any Identifying Communications Information that DISH at Any Time in its Sole Discretion deems to be confusingly similar to: (a) any Identifying Communications Information then being used by DISH or any of its Affiliates, or (b) any Identifying Communications Information that DISH advises Licensee that either DISH or any of its Affiliates intends to use.

\* \* \* \* \*

Licensee further agrees to immediately transfer to DISH or its designated Affiliate(s), upon DISH's request, all right, title and interest in, to and under any trademark, service mark, or Identifying Communications Information that Licensee has registered, submitted an application for, obtained, acquired, or otherwise sought to register in contravention of any of the provisions of this Agreement, any applicable Business Rules and/or the Usage Standards.  Licensee's failure to comply with the provisions of this Section 7 shall constitute a material breach of this Agreement.

\* \* \* \* \*

Licensee's obligations in this Section 7 shall survive the expiration or termination (for any reason or no reason whatsoever) of this Agreement indefinitely.

*Agreement*, pp. 35 - 35, ¶ 7.

Paragraph eight of the Trademark License Agreement provides further:

> Licensee will also fully cooperate with DISH and its Affiliates in the
> defense and protection of the Trademarks (whether in typewritten, stylized
> or any other form), at DISH's and/or its Affiliates' expense. Similarly,
> nothing in this Agreement shall be construed to require that DISH and/or
> its Affiliates take any action to protect any of the Trademarks in any
> instance, and DISH and its Affiliates shall not be liable to Licensee in any
> manner whatsoever for failure to take any such action.

*Agreement*, p. 36, ¶ 8.[3]

While the Agreement was in force, DISH filed applications to register the mark DISHNET (U.S. Serial Nos. 85576543 and 85576536) (filed on March 22, 2012) and began offering its DISHNET high-speed satellite internet service to consumers later in the year. *Kasnevich Declaration* [#101-1], Exhibits 35 and 36 [#101-36 & 101-37] (applications); *Werner Declaration* [#100 - filed under restriction], ¶ 27. Dish contacted Ms. King and demanded that she transfer the dishnet.com domain name to Dish as required by the Trademark License Agreement. *Werner Declaration* [#100 - filed under restriction], ¶ 28. Ms. King refused to transfer the domain name and elected not to sign a new agreement with Dish when the Agreement expired on December 31, 2012.

The plaintiffs argue that the defendants have not provided sufficient evidence to prove that Dish demanded transfer of the DISHNET trademark and dishnet.com domain name during the term of the Agreement. However, Ms. King does not deny that after this suit was filed in 2013, Dish demanded transfer of the trademark and domain name. *Response* [#118], p. 4.

Immediately after the Agreement expired, Ms. King filed incorporation papers for a new company, Digital Satellite Connections, LLC (DSC LLC), with an effective date of December 31, 2012. *Kasnevich Declaration* [#101-1], Exhibit 29 [#101-30]. Also on

---

[3] The term "Trademarks" is defined on page 34 in paragraph 1 (c)(iii) of the Trademark License Agreement.

December 31, 2012, Ms. King executed an assignment of trademarks and domain names, assigning DISHNET, dishnet.com, and other trademarks, servicemarks, trade names, and domain names to DSC LLC. *Kasnevich Declaration* [#101-1], Exhibit 30 [#101-31]. As a result, plaintiff DSC LLC now claims ownership of and the right to use the mark DISHNET and the domain name dishnet.com.

In their complaint [#3] the plaintiffs assert seven claims against Dish: (1) permanent injunction; (2) trademark infringement - 15 U.S.C. § 1125; (3) false designation of origin, false descriptions, and unfair competition - 15 U.S.C. § 1125(a); (4) trademark infringement under Florida statutory law; (5) trademark infringement under Florida common law; (6) contributory trademark infringement; and (7) breach of contract. Most of the claims of the plaintiffs are based on their contention that Dish is wrongfully using the DISHNET trademark allegedly owned by Digital Satellite Connections, LLC. The breach of contract claim is based on the allegation that Dish failed to pay to Ms. King amounts due under the Agreement for referral of customers to Dish by Ms. King. The plaintiffs seek an injunction, recovery of profits derived from the improper use of the trademark DISHNET, treble damages for trademark infringement, breach of contract damages, and other relief.

Dish asserts ten counterclaims against the plaintiffs: (1) breach of contract based on the retailer agreements, including the 2010 Agreement; (2) trademark infringement - 15 U.S.C. § 1114; (3) trademark infringement, false designation of origin, and unfair competition - 15 U.S.C. § 1125(a); (4) false advertising - 15 U.S.C. § 1125(a); (5) trademark infringement and unfair competition - common law; (6) deceptive trade practices - Colorado Consumer Protection Act; (7) deceptive and unfair trade practices - Florida Deceptive and Unfair Trade Practices Act; (8) cybersquatting - 15 U.S.C. §

7

1125(d); (9) trademark dilution - 15 U.S.C. § 1125(c); (10) fraud on the Florida Department of State. Dish seeks an injunction prohibiting the plaintiffs from using Dish Network trademarks, including DISHNET, an accounting of the profits of DSC and King derived from their allegedly improper actions, transfer of the dishnet.com domain name to Dish, statutory damages, specific performance, punitive damages, costs, and other relief. *Answer* [#5].

## IV. ANALYSIS

Nearly all of the claims and counterclaims hinge on a determination of which party has the legal right to own and use the trademark DISHNET and the domain name dishnet.com . Viewing the undisputed facts in the record in the light most favorable to the plaintiffs, I conclude as a matter of law that under the terms of the 2010 Agreement, defendant DISH Network, LLC and its affiliates, as the term "Affiliates" is defined in the Agreement, are entitled to ownership and use of the trademark DISHNET and the related domain name dishnet.com.

Under the terms of the 2010 Agreement, Kathy King and her d/b/a, Digital Satellite Connections, were obligated to transfer to DISH Network, LLC ownership of and the rights to use the trademark DISHNET and the domain name dishnet.com. At the latest, that obligation arose when Dish Network, LLC demanded such a transfer from Ms. King and Digital Satellite Connections. The evidence in the record does not show a genuine dispute as to any fact material to a determination of the application of the terms of the 2010 Agreement to this issue.

### A. Claims of the Plaintiffs

The defendants seek summary judgment on each of the claims of the plaintiff. Claims two through six, as alleged in the complaint [#3], each require the plaintiffs to

prove that DISHNET is a protectable trademark owned by one or both of the plaintiffs. However, I conclude that defendant DISH Network, LLC and its affiliates are legally entitled to the ownership and use of the DISHNET trademark. That was true while the 2010 Agreement was in effect and remained true after the Agreement expired. When plaintiff Kathy King sought to transfer her purported rights to the DISHNET mark and the dishnet.com domain name to plaintiff DSC LLC, Ms. King was not legally entitled to those rights. Of course, she could not transfer rights to which she is not legally entitled. Given these facts, the plaintiffs cannot establish at least one of the essential elements of their claims two through six.

Claim one, the claim of the plaintiffs for injunctive relief prohibiting the defendants from using the DISHNET mark, also fails because this claim requires the plaintiffs to show that DISHNET is a protectable trademark owned by one or both of the plaintiffs. Thus, the defendants are entitled to summary judgment on claims one through six.

The breach of contract claim asserted by the plaintiffs is based on their allegations that Dish failed to pay Ms. King amounts due to her based on her referral of customers to Dish while the Agreement was in effect. Under the terms of the Agreement, these claims now are barred. First, any claims of Ms. King which arose before the 2010 Agreement became effective are barred under paragraph 2.10.2 of the Agreement. *Agreement*, pp. 7 - 8, ¶ 2.10.12. Second, under the terms of the Agreement, any claim by Ms. King for any non-payment of fees by Dish must be submitted to Dish within 90 days of the occurrence of the relevant event. *Agreement*, p. 24, ¶ 15.1. Absent compliance with this contractual requirement, Ms. King waived or forfeited her claim. It is undisputed that Ms. King did not submit any notice concerning her breach of contract claim to Dish under the terms of this portion of the Agreement.

Thus, the defendants are entitled to summary judgment on the breach of contract claim.

### B. Counterclaims of the Defendants

Dish seeks summary judgment on its first, second, and third counterclaims. The first counterclaim is for breach of contract based on the Dish retailer agreements with Ms. King and DSC. The second counterclaim is for trademark infringement under 15 U.S.C. § 1114. The third counterclaim is for trademark infringement, false designation of origin, and unfair competition under 15 U.S.C. § 1125(a).

Under Colorado law, which controls the breach of contract claim, a party claiming breach of contract must show: (1) the existence of a contract; (2) performance by the party claiming breach; (3) failure to perform by the other party; and (4) resulting damages. ***Western Distributing Co. v. Diodosio***, 841 P.2d 1053, 1058 (Colo.1992). The undisputed facts in the record show the existence of a contract – the 2010 Agreement – performance by Dish, and a failure to perform by Ms. King. Ms. King failed to transfer the DISHNET mark and the dishnet.com domain name to Dish. Thus, Dish is entitled to summary judgment on these three elements of its breach of contract claim. However, the undisputed facts in the record do not show what damages, if any, Dish suffered as a result of the breach by Ms. King. In its motion, Dish does not address the proof required to establish its claim for specific performance. Thus, the claim for specific performance remains unresolved as well.

Trademark infringement is a type of unfair competition. A claim of trademark infringement and a claim of unfair competition based on a trademark have essentially identical elements and are properly addressed together. ***Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research***, 527 F.3d 1045, 1050 (10th Cir. 2008). To prevail on its second or third counterclaims, Dish must show: (1) Dish owns a

10

protectable trademark; (2) the defendants used the trademark in connection with goods or services; and (3) use of the trademark by the defendants "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." 15 U.S.C.A. § 1125 (a)(1)(A); *Utah Lighthouse Ministry*, 527 F.3d at 1050. For relief on these counterclaims, Dish seeks an award of damages, treble damages for willful infringement, and an injunction prohibiting Ms. King and Digital Satellite Connections, LLC from using the DISHNET trademark and the dishnet.com domain name.

The undisputed facts in the record demonstrate that Dish owns a protectable trademark, DISHNET, and that the defendants have used and are using that mark in connection with goods or services. Thus, Dish is entitled to summary judgment on these two elements.

In evaluating whether there is a likelihood of confusion, courts examine six nonexhaustive factors:

> (1) evidence of actual confusion between the marks, (2) the strength of the contesting mark, (3) the intent of the alleged infringer in adopting the contested mark, (4) the degree of similarity between the marks, (5) the similarity of the parties' services and manner in which they market them, and (6) the degree of care consumers are likely to exercise in purchasing those services.

*Vail Associates, Inc. v. Vend-Tel-Co.*, 516 F.3d 853, 863 (10th Cir. 2008). In this case, there is some evidence of actual confusion, that the DISHNET mark is a strong mark, that the mark used by the defendants is essentially identical to the mark owned by Dish, and the similarity of the services offered by Dish and by the defendants. However, the issue of the intent of the plaintiffs in using the DISHNET mark, including

11

willful infringement of the DISHNET mark, cannot be resolved on the current record. To some extent, the evidence relevant to these issues runs together. These issues are more appropriately resolved based on a full presentation of evidence at trial. Thus, I deny the motion for summary judgment of Dish on the issue of likelihood of confusion, including the intent of the defendants, and on the issue of willful trademark infringement.

### C.  Motion for Summary Judgment of the Plaintiffs

The plaintiffs seek partial summary judgment on their trademark related claims two through six. In addition, the plaintiffs seek summary judgment on the breach of contract counterclaim of Dish, counterclaim one, the trademark related counterclaims of Dish, counterclaims two through nine, and the fraud claim of Dish, counterclaim ten. In addition, the plaintiffs seek summary judgment on the affirmative defenses asserted by Dish: failure to state a claim, claims barred by contract, waiver, abandonment, prior rights, and equitable doctrines, such as laches. The motion of the plaintiffs is denied.

With the exception of the breach of contract claim, the affirmative claims of the plaintiffs are based on their contention that Dish wrongfully is using the DISHNET trademark allegedly owned by DSC LLC. I conclude as a matter of law that under the terms of the 2010 Agreement, defendant Dish Network LLC and its affiliates, as the term "Affiliates" is defined in the Agreement, are entitled to ownership and use of the trademark DISHNET and the related dishnet.com domain name. Thus, I must deny the motion for summary judgment of the plaintiffs on their trademark claims two through six.

Given the terms of the Agreement and the other undisputed facts in the record, the plaintiffs are not entitled to summary judgment on the breach of contract counterclaim of Dish. Rather, for the reasons stated above, Dish is entitled to summary judgment on three of the key elements of its breach of contract claim. Given the

conclusion that Dish has the right to use the DISHNET mark, it is not proper to award summary judgment to the plaintiff on any of the trademark related counterclaims of Dish, counterclaims two through nine.

Counteclaim ten is a claim of fraud on the Florida Department of State. In essence, Dish alleges that Ms. King and DSC LLC filed a Florida trademark application seeking to register "DishNet" as a trademark. *Answer* [#5], p. 26, ¶ 26. In that application, Dish alleges, the plaintiffs falsely represented that they knew of no other party with rights to the mark. *Id.*, pp. 26 - 27, ¶¶ 30 - 32. On this basis, Dish alleges that the Florida trademark registration obtained by the plaintiffs is subject to cancellation under Florida law and seeks an order directing the Florida Department of State to cancel the registration. In addition, Dish alleges that this registration caused it to suffer damages.

The plaintiffs argue that this claim should be dismissed for failure to state a claim on which relief can be granted because Dish has failed to plead its fraud claim with the specificity required by FED. R. CIV. P. 9(b). Dish has specified the specific allegedly fraudulent statement made by the plaintiffs, the place where the statements were made, the reasons the statements allegedly were false, and the time the statements were made. *Answer* [#5], pp. 26 - 27, ¶¶ 30 - 32. These allegations satisfy the requirements of Rule 9(b). In addition, the plaintiffs contend Dish improperly seeks relief from the Florida Department of State. If the Florida trademark registration is invalid because of the alleged fraud, the plaintiffs cite no valid reason to conclude that this court does not have the authority to direct the Florida Department of State to cancel the registration.

## V. CONCLUSION & ORDERS

Viewing the undisputed facts in the record in the light most favorable to the

plaintiffs, I find and conclude that defendants Dish Network Corporation, Dish Network, LLC, and Dishnet Satellite Broadband, LLC, are entitled to summary judgment on each of the claims of the plaintiffs, as alleged in the complaint [#3]. In addition, the defendants are entitled to summary judgment on the first three elements of their breach of contract counterclaim: (1) the existence of a contract; (2) performance by the party claiming breach; and (3) failure to perform by the other party. Finally, the defendants are entitled to summary judgment on the first two elements of the trademark claims asserted as counterclaims two and three: (1) that Dish Network, LLC and affiliates own a protectable trademark, DISHNET; and (2) that Dish Network, LLC and affiliates have used and are using that mark in connection with goods or services. The balance of the motion for summary judgment of the defendants must be denied. Finally, the motion for summary judgment of the plaintiffs must be denied.

  **THEREFORE, IT IS ORDERED** as follows:

  1. That the **Plaintiffs' Motion for Partial Summary Judgment and permanent Injunction** [#104, restricted filing #97] filed July 31, 2014, is **DENIED**;

  2. That the **Defendants' Motion for Summary Judgment** [#101, restricted filing #100] filed July 31, 2014, is **GRANTED** in part as follows:

  (A)  as to each of the claims of the plaintiffs, as alleged in the complaint [#3];

  (B)  as to the first three elements of the breach of contract counterclaim of the defendants: (1) the existence of a contract; (2) performance by the party claiming breach; and (3) failure to perform by the other party; and

  (C)  as to the first two elements of the trademark claims asserted as counterclaims two and three: (1) that Dish Network, LLC and affiliates own a protectable trademark, DISHNET; and (2) that Dish Network, LLC and affiliates have used and are using that mark in connection with goods or services; and

3. That otherwise, the **Defendants' Motion for Summary Judgment** [#101, restricted filing #100] filed July 31, 2014, is **DENIED**.

Dated October 20, 2014, at Denver, Colorado.

**BY THE COURT:**

*Bob Blackburn*
Robert E. Blackburn
United States District Judge