IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn

Civil Action No. 13-cv-02934-REB-CBS

DIGITAL SATELLITE CONNECTIONS, LLC, and,
KATHY KING,

      Plaintiffs,

v.

DISH NETWORK CORPORATION,
DISH NETWORK, LLC, and
DISHNET SATELLITE BROADBAND, LLC,

      Defendants.

---

## ORDER CONCERNING MOTION FOR SUMMARY JUDGMENT

---

Blackburn, J.

      This matter is before me on the **Defendants' Motion for Summary Judgment and Request for Entry of an Award of Specific Performance** [#212][1] filed November 10, 2014.  The defendants filed a response [#214], and the plaintiffs filed a reply [#216].  I grant the motion in part and deny it in part.

## I.  JURISDICTION

      I have jurisdiction over this case under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1332 (diversity), 28 U.S.C. § 1338 (trademark), and  15 U.S.C. § 1121(a) (trademark).

---

[1]  "[#212]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

## II.  STANDARD OF REVIEW

Summary judgment is proper when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[2]  FED. R. CIV. P. 56(a); **Celotex Corp. v. Catrett**, 477 U.S. 317, 322 (1986).  A dispute is "genuine" if the issue could be resolved in favor of either party.  **Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.**, 475 U.S. 574, 586 (1986); **Farthing v. City of Shawnee**, 39 F.3d 1131, 1135 (10th Cir. 1994).  A fact is "material" if it might reasonably affect the outcome of the case.  **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 248 (1986); **Farthing**, 39 F.3d at 1134.

A party who does not have the burden of proof at trial must show the absence of a genuine issue of fact.  **Concrete Works, Inc. v. City & County of Denver**, 36 F.3d 1513, 1517 (10th Cir. 1994), **cert. denied**, 514 U.S. 1004 (1995).  By contrast, a movant who bears the burden of proof must submit evidence to establish every essential element of its claim or affirmative defense.  **See In re Ribozyme Pharmaceuticals, Inc. Securities Litigation**, 209 F.Supp.2d 1106, 1111 (D. Colo. 2002).

In either case, once the motion has been properly supported, the burden shifts to the nonmovant to show by tendering depositions, affidavits, and other competent evidence that summary judgment is not proper.  **Concrete Works**, 36 F.3d at 1518.  All evidence must be viewed in the light most favorable to the party opposing the motion.  **Simms v. Oklahoma ex rel Department of Mental Health and Substance Abuse Services**, 165 F.3d 1321, 1326 (10th Cir.), **cert. denied**, 528 U.S. 815 (1999)

---

[2] The issues raised by and inherent to the motions for summary judgment are fully briefed, obviating the necessity for evidentiary hearing or oral argument. Thus, the motions stand submitted on the papers.

(abrogated on otr grounds, **Martinez v. Potter**, 347 F.3d 1208, 1210 - 1211 (10th Cir.

2003); **Eisenhour v. Weber Cnty.**, 744 F.3d 1220, 1227 (10th Cir. 2014)).   However,

conclusory statements and testimony based merely on conjecture or subjective belief

are not competent summary judgment evidence.   **Rice v. United States**, 166 F.3d

1088, 1092 (10th Cir.), **cert. denied**, 120 S.Ct. 334 (1999).

## III.  BACKGROUND

Previously, I entered an **Order Concerning Motions for Summary Judgment**

[#196] filed October 20, 2014.  That order provides the factual and legal background for

the present motion for summary judgment.  Defendant, Kathy King, operated a sole

proprietorship or d/b/a named Digital Satellite Connections (DSC).  Ms. King and DSC

acted as a retailer for defendant Dish Network, LLC and its affiliates.[3]  In 1999, Donald

King, a quondam owner and operator of DSC, registered the internet domain name

dishnet.com.  He used that domain name to display a web page telling consumers to

contact DSC to purchase Dish Network services.  Mr. King also registered the internet

domain names: dishnetworks.com, dishnetworksatellite.com, and dishnet500.com.  He

used these domain names to advertise the sale of Dish Network services.  Kathy King

took over operation of DSC at some point in the years 2002 to 2004.

DSC executed a Dish Network Retailer Agreement which became effective as of

December 31, 2010.  Exhibit 7 [#100-3] [filed under restriction] (Retailer Agreement).

The Retailer Agreement refers to and includes a separate trademark license agreement.

Exhibit 7 [#100-3] [filed under restriction], CM/ECF pp. 34 - 40 (Trademark License

Agreement).  While the Retailer and Trademark License Agreements were in effect,

---

[3] I refer to the defendants collectively as Dish.

Dish filed applications to register the mark DISHNET (U.S. Serial Nos. 85576543 and 85576536) (filed on March 22, 2012) and began offering its DISHNET high-speed satellite internet service to consumers later in the year.  Dish contacted Ms. King and demanded that she transfer the dishnet.com domain name to Dish as required by the Trademark License Agreement.  Ms. King refused to transfer the domain name and elected not to sign a new agreement with Dish when the Retailer Agreement expired on December 31, 2012.  *See Order* [#196], p. 6.  The Trademark License Agreement provides that some provisions remain in effect after expiration of the contracts.

On the day the Retailer and Trademark License Agreements expired, Ms. King filed to incorporatie her new company, plaintiff Digital Satellite Connections, LLC (DSC, LLC).  She then transferred all of the intellectual property owned by herself and her d/b/a "Digital Satellite Connections" to her new LLC.  *Motion for summary judgment* [#101], Exhibit 30 [#101-31].  The trademarks and domain names transferred include those at issue in this case.  *Id.*, CM/ECF p. 4.  The next day, DSC, LLC filed a federal application to register "DISHNET" as a trademark, claiming that the company (through its predecessor-in-interest, Kathy King, who claims to be the assignee of the rights held by  Catherine King) had used the DISHNET mark in connection with "[a]udio and video broadcasting services over the Internet; Internet access provider services; [and] [p]rovision of access to the internet" since June 1999, which is when Donald King first began using the domain name to host a web page promoting his Digital Satellite Connections business.  *Motion for summary judgment* [#101], Exhibit 31 [#101-32].  DSC, LLC continues to use the trademarks and internet domain names at issue here.

In my earlier order [#196], I found and concluded:

Under the terms of the 2010 Agreement, Kathy King and her d/b/a, Digital

4

> Satellite Connections, were obligated to transfer to DISH Network, LLC
> ownership of and the rights to use the trademark DISHNET and the
> dishnet.com domain name.  At the latest, that obligation arose when Dish
> Network, LLC demanded such a transfer from Ms. King and Digital
> Satellite Connections.  The evidence in the record does not show a
> genuine dispute as to any fact material to a determination of the
> application of the terms of the 2010 Agreement to this issue.

*Order* [#196], p. 8.  As to all of the claims asserted by Ms. King and DSC, LLC against

Dish, I granted the motion for summary judgment of Dish.

In the same order, I granted summary judgment to Dish on the first three

elements of the breach of contract counterclaim against Ms. King: (1) the existence of a

contract; (2) performance by the party claiming breach (Dish); and (3) failure to perform

by the other party (Ms. King).  Addressing the fourth element of the breach of contract

claim, I found that

> the undisputed facts in the record do not show what damages, if any, Dish
> suffered as a result of the breach by Ms. King.  In its motion, Dish does
> not address the proof required to establish its claim for specific
> performance.  Thus, the claim for specific performance remains
> unresolved as well.

*Order* [#196], p. 10.

In its present motion, Dish seeks summary judgment on the fourth element of its

breach of contract claim.  Specifically, Dish seeks an award requiring specific

performance by Kathy King and DSC, LLC of the terms of the 2010 Retailer and

Trademark License Agreement, cessation of use of the DISHNET trademark,

abandonment of the plaintiffs' federal application to register that mark, cessation of use

of the DISH and DISH NETWORK trademarks, and the transfer to Dish Network of all

"dish" domain names owned by the plaintiffs, meaning all domain names incorporating a

formative of a DISH Network mark, such as "DISH."  Dish seeks specific performance in

lieu of actual damages and seeks only an award of nominal damages.  *Motion* [#212], p.

14.  In addition, Dish seeks summary judgment on the defenses and affirmative defenses Ms. King and DSC, LLC have asserted against the counterclaim of Dish for breach of contract.

## IV.  ANALYSIS

### A.  Nominal Damages

Dish has not been granted summary judgment on the fourth element of its breach of contract claim – damages resulting from the breach.  As Dish notes, a showing of actual damages is not crucial to this claim.  Rather, a breach can be the basis for an award of nominal damages.  ***Interbank Investments, LLC v. Eagle River Water and Sanitation Dist.***, 77 P.3d 814, 818 (Colo. App.,2003).  As noted by Dish, the damages expert for the plaintiffs has estimated that, assuming Dish is not entitled to use the DISHNET trademark, Dish would have paid no less than 2.2 million dollars to use that trademark. [#128-1] Eihorn Report, ¶ 3.5.[4]  As I held previously, under the Trademark License Agreement, Dish is entitled to own and use the DISHNET trademark, associated marks, and the internet domain names at issue here.  However, Ms. King and DSC, LLC have refused to assign those trademarks and domain names to Dish and are preventing Dish from using those trademarks and domain names in its business, including that part of the business of Dish known as Dishnet.  Ms. King and DSC, LLC continue to use the trademarks and domain names at issue here.  These undisputed facts are sufficient to show that Dish has been damaged as a result of the breach of the Trademark Agreement by Ms. King.  This is ample to sustain an award of nominal damages.

---

[4]  Dish has filed a motion [#128] under Fed. R. Evid. 702 to exclude the opinions of Dr. Eihorn.

The plaintiffs contend there is a disputed issue of material fact concerning whether Dish has suffered damages, nominal or otherwise, as a result of the breaches of the Trademark License Agreement by Ms. King.  however, without question, the record demonstrates Dish has suffered damages.

## B.  Specific Performance

In its counterclaim for breach of contract, Dish seeks relief in the form of specific performance of the Trademark License Agreement. *Answer* [#5], p. 28, ¶ 39.  A suit for specific performance is an equitable action. ***Schreck v. T & C Sanderson Farms, Inc.***, 37 P.3d 510, 514 (Colo. App. 2001).  There is no absolute right to specific performance. *Id*.  Rather, (w)hether the remedy should be granted depends on the equities of the case and rests within the discretion of the trial court. *Id*.

To support an award of specific performance, the contract at issue must be reasonably certain. *Id*.  Courts may not make contracts for parties and then order their specific performance. *Id*.  The contract itself must make the precise act to be done clearly ascertainable.

It is fundamental that to enable the court to decree specific performance, the terms of the contract must be clear, definite, certain, and complete. *Id*.   Relevant considerations may include: (1) whether money damages can be calculated with a reasonable degree of certainty; (2) whether money damages can be collected once awarded; (3) whether the contract involves a unique subject matter; or (4) whether full relief would require multiple suits for damages. ***See 12-63 Corbin on Contracts*** § 63.7.  A court may grant both specific performance and damages when specific performance alone will not give complete relief. ***See Chandler Trailer Convoy, Inc. v. Rocky Mountain Mobile Home Towing Serv., Inc.***, 552 P.2d 522, 523 (Colo. App.

1976).

With regard to the trademarks and internet domains of Dish, the Trademark License Agreement is very specific.  The Trademark License Agreement defines the term "Identifying Communication Information" as

> any trade name, assumed name, domain name, telephone number (toll-free or otherwise), IP address, text messaging address, or any other letter, number, character or combination thereof used in commerce that includes or refers to any Trademark, whether in whole or in part, whether separately, formatively or otherwise, and whether properly spelled or in any typographical derivation or misspelling thereof.

*Agreement*, p. 34, ¶ 1(c)((I).[5]

Paragraph six of the agreement provides, in part:

> Licensee represents and warrants that licensee and/or its affiliates have not previously registered … any identifying communication information: (i) that includes any formative marks; (ii) which may otherwise be confusingly similar to any formative marks; or (iii) for which such registration would not be in accordance with the usage standards (as defined below). In the event that licensee: (a) has previously reserved, filed or registered, or in the future reserves, files or registers, any such formative mark; or (b) has previously registered, or in the future registers, any such identifying communication information, in each case in contravention of any of the foregoing, licensee agrees to **notify dish immediately, and shall immediately upon the request of dish, assign to dish or its designated affiliate any and all rights, title, and interests that are obtained or may be obtained through the reservation, filing, or registration of any such formative marks** ... and hereby acknowledges and agrees that any such reservation, filing, or registration, whenever occurring, shall be on behalf of and for the sole and exclusive benefit of dish, and licensee waives any and all claims or rights to any compensation whatsoever therefor. Licensee's obligations in this section 6 shall survive the expiration or termination (for any reason or no reason whatsoever) of this agreement indefinitely.

---

[5]  The term "Trademarks" is defined on page 34 in paragraph 1 (c)(iii) of the Trademark License Agreement as "(x) Listed Trademarks, (y) any trademark, service mark and/or trade name of DISH and/or any of its Affiliates thaat is not a Listed Trademark, and (z) any trademark, service mark and/or trade name that is similar to, or in a colorable variation of, any trademark, service mark and/or trade name of DISH and or any of its Affiliates that is not a Listed Trademark." The agreement defines "Listed Trademarks" in paragraph 1(c)(ii) as trademarks, service marks, and trade names of DISH and/or its affiliates that are shown in Exhibit 1 to the agreement, posted on a specified website, or set forth in the Dish Business Rules.

*Trademark License Agreement*, [#100-3] [filed under restriction], CM/ECF p. 36, ¶ 6

(bold emphasis added; original in all capitals).

      Paragraph 7 of the Trademark License Agreement includes the following terms:

      Licensee (DSC) agrees not to hold itself out as DISH Network, DISH, any DISH Affiliate, or any other related or affiliated entity.  To avoid any confusion in this respect, unless otherwise expressly agreed to in advance in a writing signed by an Executive Vice President of DISH (or his or her designee), **Licensee agrees not to use, register, submit an application for, obtain, acquire or otherwise seek as part of its business name, trade name or otherwise any trademark or service mark that DISH at Any Time in its Sole Discretion deems to be confusingly similar to any of the Trademarks, Formative Marks or any other trademark with respect to which DISH or any of its Affiliates (i) has registered; (ii) used in commerce, or (iii) is then seeking or otherwise pursuing registration (whether within the Territory or otherwise).**  In addition to (and without limitation of) any of the foregoing, Licensee agrees not to, and shall ensure that its Affiliates, if any, do not, register, submit an application for, obtain or otherwise use any Identifying Communications Information that DISH at Any Time in its Sole Discretion deems to be confusingly similar to: (a) any Identifying Communications Information then being used by DISH or any of its Affiliates, or (b) any Identifying Communications Information that DISH advises Licensee that either DISH or any of its Affiliates intends to use.

*   *   *   *   *

      **Licensee further agrees to immediately transfer to DISH or its designated Affiliate(s), upon DISH's request, all right, title and interest in, to and under any trademark, service mark, or Identifying Communications Information that Licensee has registered, submitted an application for, obtained, acquired, or otherwise sought to register in contravention of any of the provisions of this Agreement, any applicable Business Rules and/or the Usage Standards.  Licensee's failure to comply with the provisions of this Section 7 shall constitute a material breach of this Agreement.**

*   *   *   *   *

      Licensee's obligations in this Section 7 shall survive the expiration or termination (for any reason or no reason whatsoever) of this Agreement indefinitely.

*Id.*, CM/ECF pp. 36 - 37, ¶ 7 (bold emphasis added).

      Paragraph eight of the Trademark License Agreement provides further:

9

> Licensee will also fully cooperate with DISH and its Affiliates in the defense and protection of the Trademarks (whether in typewritten, stylized or any other form), at DISH's and/or its Affiliates' expense.  Similarly, nothing in this Agreement shall be construed to require that DISH and/or its Affiliates take any action to protect any of the Trademarks in any instance, and DISH and its Affiliates shall not be liable to Licensee in any manner whatsoever for failure to take any such action.

*Id.*, CM/ECF p. 37, ¶ 8.

These terms of the Trademark Agreement identify the precise acts to be done by the retailer, Ms. King, the party in breach; those terms are clear, definite, certain, and complete.  The trademarks and domain names in question involve unique subject matter that is uniquely valuable to Dish.  As Dish notes, damages caused by the improper use of a trademark are inherently difficult to calculate.  *See, e.g., Ramada Inns, Inc. v. Gadsden Motel Co.*, 804 F.2d 1562, 1564-65 (11th Cir. 1986); *I Can't Believe It's Yogurt v. Gunn*, 1997 WL 599391, at *18 (D.Colo. 1997) (damages related to trademark infringement "are inherently difficult to calculate because they pertain to damage to goodwill, an intangible property right.").  Dish cites certain statements by Ms. King which indicate it may be difficult for Dish to recover any monetary damages awarded.  *Motion* [#212], p. 9.  Further, an award of specific performance is the only way to provide to Dish the things to which it is entitled under the specific terms of the Trademark Agreement.  Damages would provide only partial relief.  Relief in the form of specific performance is appropriate in this case.

## C.  Defenses & Affirmative Defenses

The plaintiffs claim there is no evidence that the defendants made a proper request to the Ms. King or DSC for transfer of the DISHNET trademark, as required by the agreements.  The plaintiffs seek to apply the notice provision of the Retailer Agreement, paragraph 17.10.2.  *Retailer Agreement* [#100-3] [filed under restriction],

CM/ECF pp. 30 - 31, ¶ 17.10.2.  However, the terms of the Trademark License Agreement control here.  The Trademark License Agreement provides that a retailer "shall immediately upon the request of DISH, Assign to Dish or its designated affiliate" any trademark rights subject to the agreement.  *See, e.g., Trademark License Agreement* [#100-3] [filed under restriction], CM/ECF p. 36, ¶ 6.  The undisputed facts in the record show that Dish has made repeated requests to Ms. King and DSC for transfer of the trademarks and internet domain names at issue here.  Under the terms of the Trademark License Agreement, those request are sufficient.

The plaintiffs contend the Trademark License Agreement is not enforceable after it expired.  They ignore the specific terms in the agreement which remain enforceable after expiration.  *Trademark License Agreement*, Exhibit 7 [#100-3] [filed under restriction], CM/ECF pp. 36 - 37, ¶¶ 6, 7, 12.  These are the same paragraphs at issue in the present motion for summary judgment.  This argument of the plaintiffs fails.

The plaintiffs contend DSC was first to use the term Dishnet in trade and, as a result, that trademark is not subject to the terms of the Trademark License Agreement.  Previously, I concluded otherwise:

> Viewing the undisputed facts in the record in the light most favorable to the plaintiffs, I conclude as a matter of law that under the terms of the 2010 Agreement, defendant DISH Network, LLC and its affiliates, as the term "Affiliates" is defined in the Agreement, are entitled to ownership and use of the trademark DISHNET and the related dishnet.com domain name.  Under the terms of the 2010 Agreement, Kathy King and her d/b/a, Digital Satellite Connections, were obligated to transfer to DISH Network, LLC ownership of and the rights to use the trademark DISHNET and the dishnet.com domain name.  At the latest, that obligation arose when Dish Network, LLC demanded such a transfer from Ms. King and Digital Satellite Connections.  The evidence in the record does not show a genuine dispute as to any fact material to a determination of the application of the terms of the 2010 Agreement to this issue.

*Order* [#196], p. 8.  In its response [#214] and in its motion for reconsideration [#221] of

my summary judgment ruling, the plaintiffs produce no valid basis to reconsider this ruling.

Next, the plaintiffs cite a portion of paragraph seven of the Trademark License Agreement.

> To avoid any confusion in this respect, unless otherwise expressly agreed to in advance in a writing signed by an Executive Vice President of DISH (or his or her designee), Licensee agrees not to use, register, submit an application for, obtain, acquire or otherwise seek as part of its business name, trade name or otherwise any trademark or service mark that DISH at Any Time in its Sole Discretion deems to be confusingly similar to any of the Trademarks, Formative Marks . . .

*Trademark License Agreement*, [#100-3] [filed under restriction], CM/ECF p. 36 - 37, ¶ 7. The plaintiffs contend "DISH Vice President Steve McElroy expressly agreed to in advance in a writing that Kathy King could use DISHNET." *Response* [#214], p. 12. The document cited by the plaintiffs is a Standardized Structure Change Checklist [#97-17], dated January 7, 2009, an exhibit to the motion for partial summary judgment [#97] of the plaintiffs. This form permits a new retailer, Kathy Kind dba Digital Satellite Connections, to be substituted as a retailer for Donald King dba Digital Satellite Connections. *Standardized Structure Change Checklist* [#97-17], p.1. This was done when EchoStar Satellite LLC, the predecessor of Dish, was operating the business. The form indicates it was approved by EchoStar Vice President Steve McElroy.

An e-mail attached to the form asks Mr. McElroy to "(p)lease approve this SC. This retailer is changing the primary owner due to the death of the current owner. Fyi . . . This is the retailer you were trying to get dishnet.com from." *Id.*, CM/ECF p. 2. On the form, the e-mail address for the new retailer is shown as "feedback@dishnet.com" or "info@dishnet.com." The terms of this form and the associated e-mails make clear the form is an approval of the structural change of a retailer. The fact that "dishnet.com" is

mentioned three times does not make this form an approval by EchoStar of the use by Ms. King of dishnet.com.  Such an interpretation of these documents is strained to the breaking point.  At most, these forms show EchoStar knew of Ms. King's use of "dishnet.com."

Equally important, the form shows approval by Vice President Steve McElroy, not by an Executive Vice President.  Paragraph seven, quoted above, requires approval by an Executive Vice President of DISH (or his or her designee).  There is no evidence that Mr. McElroy was an Executive Vice President or a designee of such a person.

The plaintiffs contend Dish waived its right to enforce the Trademark License Agreement because Dish knew of its trademark rights and knew that Kathy King was using DISHNET as early as 2001.  It is important to note that waiver is accomplished by intent, while  forfeiture comes about through neglect.  ***See, e.g., U.S. v. Carrasco-Salazar***, 494 F.3d 1270, 1272 (10th Cir. 2007).  Addressing the intent aspect of waiver, the plaintiffs again cite the Standardized Structure Change Checklist [#97-17].  However, this document does not reflect an intent to permit Kathy King to use dishnet or dishnet.com and, under the terms of the applicable agreements, is not a valid approval of her use of dishnet.  The waiver argument fails.

Next, the plaintiffs claim Dish is estopped from asserting its rights to the Dishnet trademark.  The elements of estoppel are "(1) The party to be estopped must know the facts; (2) He must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) The latter must be ignorant of the true facts; and (4) He must rely on the former's conduct to his injury." ***Sweeten v. U.S. Dept. of Agriculture Forest Service***, 684 F.2d 679, 682 n. 5 (10th Cir. 1982).  "While the doctrine of promissory estoppel is applicable to promises, the

doctrine of equitable estoppel is applicable to misstatements of fact." ***Board of County Com'rs of Summit County v. DeLozier***, 917 P.2d 714, 716 (Colo.1996).   "The reliance of the party seeking to benefit from the doctrine of equitable estoppel must be reasonable." ***Committee for Better Health Care for All Colorado Citizens by Schrier v. Meyer***, 830 P.2d 884, 892 (Colo. 1992).

Ms. King relies on an alleged misstatement of fact rather than a promise.  Ms. King claims Dish approved of advertisements using DISHNET as early as 2001. *Response*, Exhibit 2 (King Affidavit), ¶ 9.  She contends a Dish Southeast Regional Manager, Tim Kohl, told her in 2004 "not to worry" about the previously expressed interest of Dish in acquiring Dishnet.  *Id.*, ¶ 11.  She says Mr. Kohl withdrew a previous request of an Echostar representative in which Ms. King was asked if she "would be willing to sign the dishnet.com domain over the Echostar."  *Id.*  Relying on that assurance, she says, she continued to increase her promotion of the DISHNET mark. Ms. King says she was not aware of the fact that Dish claimed to own the Dishnet mark.

The statements of Mr. Kohl to Ms. King are not actionable misstatements of fact. Mr. Kohl withdrew the previous request of an Echostar employee for the transfer of dishnet.com and told Ms. King "not to worry."  In the context of the fact of this case, those statements are not misstatements of fact.  In addition, Ms. King claims she reasonably relied on these statements to operate under the presumption that she owned Dishnet.  Given the terms of the 2010 agreement, particularly the Trademark License Agreement, such reliance cannot be seen as reasonable.

### D.  Specific Performance Against Digital Satellite Connections, LLC

To rehearse, Digital Satellite Connections, LLC (DSC, LLC) was formed just after the 2010 Retailer and Trademark License Agreements expired.  Kathy King and Digital

Satellite Connections (DSC), the name of her sole proprietorship, are parties to those agreements.  However, DSC, LLC is not a party to those agreements.  The record indicates Ms. King transferred all of the intellectual property owned by herself and DSC, to DSC, LLC shortly after DSC, LLC was formed.

The plaintiffs contend specific performance may not be ordered against an entity that is not a party to the contract under which performance is sought.  As a general matter, this is true, but there are exceptions.  Dish notes that "specific performance may be granted against a subsequent purchaser who is not a bona fide purchaser for value." ***Chandler Trailer Convoy, Inc. v. Rocky Mountain Mobile Home Towing Serv., Inc.***, 552 P.2d 522, 522 - 523 (Colo. App. 1976).  Dish contends DSC, LLC is not a bona fide purchaser for value of the intellectual property previously owned by Ms. King and DSC.  However, there is no evidence in the record to substantiate or refute this proposition.  In these circumstances, the plaintiffs contend, this court may not order specific performance by DSC, LLC.  I agree.  Therefore, as to the request for an order for specific performance of the Trademark License Agreement by DSC, LLC, the motion for summary judgment must be denied.

The fact that DSC, LLC owns the trademarks and domain names at issue may or may not indicate that Ms. King no longer has the ability to perform her continuing obligations under the Trademark License Agreement.  On the current record, it is unclear if Ms. King has control of DSC, LLC or not.  However, given the circumstances detailed in this order, it is appropriate to order Ms. King to perform her contractual obligations to the extent she has the legal ability to do so.

## V.  CONCLUSION & ORDERS

As to plaintiff and counterclaim defendant Kathy King, Dish has shown it is

entitled to summary judgment on its counterclaim for breach of contract.  In addition,

Dish has shown that it is entitled to an award of specific performance against Ms. King

concerning her obligations under the Retailer and Trademark License Agreements,

including her obligation to transfer to Dish Networks, LLC the trademarks and domain

names at issue here.  The defenses and affirmative defenses of Ms. King are without

merit, and, thus, Dish is entitled to summary judgment on those defenses and

affirmative defenses.

Counterclaim defendant Digital Satellite Connections, LLC is not a party to the

Retailer Agreement and Trademark License Agreement under which Dish seeks specific

performance.  Dish has not shown that it is entitled to specific performance by an entity

that is not a party to the relevant contracts.  Therefore, as to Digital Satellite

Connections, LLC, summary judgment is denied as to the claim of Dish for summary

judgment on its counterclaim for breach of contract and the corresponding request for

specific performance by Digital Satellite Connections, LLC.

In its motion [#212] and an earlier filing [#201], Dish said it would dismiss its

remaining counterclaims, trademark infringement, unfair competition, and false

advertising, without prejudice if its motion for summary judgment and request for an

order of specific performance against both plaintiffs is granted.  Because that

contingency is not satisfied by this order, those other counterclaims remain pending.

**THEREFORE, IT IS ORDERED** as follows:

1.  That the **Defendants' Motion for Summary Judgment and Request for
Entry of an Award of Specific Performance** [#212] filed November 10, 2014, is
granted in part;

2.  That as to plaintiff and counterclaim defendant Kathy King, summary

judgment is granted on the counterclaim for breach of contract of Dish Network, LLC;

3.  That summary judgment is granted in favor of Dish Network, LLC as to the defenses and affirmative defenses asserted by Kathy King in response to the counterclaim for breach of contract of Dish;

4.  That as partial relief on the counterclaim for breach of contract, Dish Network, LLC is entitled to an order of specific performance of the Retailer Agreement and Trademark License Agreement between Kathy King dba Digital Satellite Connections and Dish Network, LLC, as specified below;

5.  That Kathy King dba Digital Satellite Connections shall specifically perform their obligations under the 2010 Retailer Agreement and Trademark License Agreement, to the extent they have the legal ability to do so, including:

(a) Kathy King and anyone acting in concert with and under the control of Kathy King shall be permanently enjoined from use of the DISHNET trademark and the DISH and DISH NETWORK trademarks;

(b) Kathy King and anyone acting in concert with and under the control of Kathy King shall immediately abandon any application she or they may have pending before the United States Patent and Trademark Office seeking rights to use the DISHNET trademark and the DISH and DISH NETWORK trademarks;

(c) Kathy King and anyone acting in concert with and under the control of Kathy King shall immediately abandon any opposition she or they may have pending before the United States Patent and Trademark Office opposing an application by any of the defendants to secure the right to use the DISHNET trademark and the DISH and DISH NETWORK

trademarks; and

(d) That by October 6, 2015, Kathy King and anyone acting in concert with

and under the control of Kathy King shall transfer to Dish Network, LLC

the domain names dishnet.com, dishnetworks.com,

dishnetworksatellite.com, dishnet500.com, and any other domain names

containing the DISH, DISH NETWORK, or DISHNET trademarks; and

6.   That otherwise, the **Defendants' Motion for Summary Judgment and**

**Request for Entry of an Award of Specific Performance** [#212] filed November 10,

2014, is denied.

Dated September 22, 2015, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge